**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JOSE LUIS SERNA,

      Petitioner,

    v.

AMY MILLER, Warden of Centinela State Prison,

      Respondent.

Case No. 1:10-cv-02124-LJO-SKO-HC

ORDER SUBSTITUTING RESPONDENT

FINDINGS AND RECOMMENDATIONS TO DISMISS STATE LAW CLAIMS, DENY THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 10), DIRECT THE ENTRY OF JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY

**OBJECTIONS DEADLINE: THIRTY (30) DAYS**

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the first amended petition (FAP), filed by Petitioner on November 24, 2010, in the form of a motion, which was later deemed by the Court to constitute a first amended petition. Respondent filed an answer on September 20, 2011, and Petitioner filed a traverse on April 16, 2012.

1

I.   <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Kern County Superior Court (KCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes that it has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Mike McDonald, Warden of the High Desert State Prison, who pursuant to the judgment of conviction, had custody of Petitioner at his institution of confinement at the time the petition was filed.  (Doc. 13, 1:22-23.) Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d

359, 360 (9th Cir. 1994).

On October 9, 2012, Petitioner filed a notice of a change of address to the Centinela State Prison in Imperial, California.   A transfer that occurs after jurisdiction has attached does not defeat personal jurisdiction.   _Francis v. Rison_, 894 F.2d 353, 354 (9th Cir. 1990) (citing _Smith v. Campbell_, 450 F.2d 829, 834 (9th Cir. 1971)).   Thus, the Court concludes that it has jurisdiction over the person of Respondent.

II.   Order to Substitute Warden Amy Miller as Respondent

Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party.   It further provides that the Court may order substitution at any time.

Accordingly, the Clerk is DIRECTED to substitute AMY MILLER, Warden of the Centinela State Prison, as Respondent in this action.

III.   Procedural Summary and Petitioner's Contentions

The following procedural summary appeared in the unpublished decision of the Court of Appeal of the State of California, Fifth Appellate District (CCA), in _People v. Jose Luis Serna, Jr._, case number F055794 (KCSC case number BF117571(A)), 2009 WL 1964068, *1, filed on July 9, 2009:

> Following a trial, a jury convicted Jose Luis Serna, Jr. (appellant) of premeditated attempted murder (Pen.Code, §§ 664, 187, subd. (a), 189), FN1 assault with a firearm (§ 245, subd. (b)), and possession of methamphetamine (Health & Saf.Code, § 11377, subd. (a)). The jury found true the charged gang (§ 186.22, subd. (b)(1)) and firearm (§§ 12022.5, subd. (a), 12022.53, subds. (d) & (e)(1)) allegations. In a bifurcated proceeding, the trial court found true that appellant suffered prior serious felony

convictions (§§ 667, subds.(a) & (c)-(j), 1170.12, subds. (a)-(e)), and that he had served a prior prison term (§ 667.5, subd. (b)).

> FN1. All further statutory references are to the Penal Code unless otherwise stated.

The trial court sentenced appellant to a determinate term of 12 years, plus a consecutive indeterminate term of 55 years to life.

People v. Jose Luis Serna, Jr., case number F055794, 2009 WL 1964068 (CCA decision) at *1.

Petitioner raises the following claims in the FAP:  1) Petitioner's rights to confrontation and cross-examination guaranteed by the Sixth and Fourteenth Amendments were violated by the introduction at trial of the preliminary hearing testimony of witness Peter Gutierrez, and 2) Petitioner seeks this Court to review the trial court's in camera review of the personnel files of police office Jonathon Swanson to determine whether Petitioner suffered a violation of his right to discovery protected by the Sixth and Fourteenth Amendments.

IV.  Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

4

presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the CCA decision:

FACTS

Close to midnight on January 7, 2006, Peter Gutierrez was shot three times in his lower right leg.FN2 Just before the shooting, Gutierrez had been praying at a church in Arvin. Outside, while straddling his bicycle, Gutierrez was putting on his gloves and cap when appellant came up to him asked him if he was "strapped," a term meaning armed with a firearm. Gutierrez, who knew appellant as "Wicho," lied and said he was.

> FN2. Gutierrez did not testify at trial.
> Following a due diligence hearing, Gutierrez's
> preliminary hearing testimony of May 9, 2007,
> was read into the record.

Appellant then called someone on his cell phone and asked the person to come to the church. Gutierrez "knew it was time to get out of there" and tried to leave. But appellant grabbed Gutierrez's bicycle and tried to pull it away from Gutierrez. Gutierrez heard footsteps and saw someone approaching. As Gutierrez ran, appellant yelled at the other person to "blast" Gutierrez.

Gutierrez saw the shooter, whom he identified as "Tomas," fire two shots at him with a pistol. He heard four shots and then "they just all came." Gutierrez was struck in his right leg as he tried to run. He was able to crawl to a nearby house where the occupant, Gloria Guerrero, called 911. He was taken to the hospital. Gutierrez eventually had a total of 24 surgeries on his leg due to the gunshots, and he continued to suffer chronic leg pain.

Police Sergeant Agustin Valdez contacted Gutierrez at Guerrero's house. Gutierrez initially told Valdez he did not know who shot him, then said he believed "Wicho" was involved, and then said he did not recognize either man. Valdez located Gutierrez's bicycle and backpack in the road. He found nine expended nine-millimeter shells

5

leading up to the house. Two cars parked in the driveway sustained gunshot damage. All of the bullets were fired from the same semiautomatic firearm.

John Spurlock, who lived across the street from the church, heard a volley of gunshots, a pause, and then another volley. He looked out of his window and saw two "pedestrians" in front of his house.

Kathy Salgado, who is married to appellant's half brother Guillermo Navarro, also knew appellant as "Wicho." Salgado, her husband, and children lived in a house behind appellant's parent's house in the vicinity of the shooting. Although she recanted at trial, Salgado told Officer Jonathan Swanson that, on the night of the shooting, she, her husband and son heard about 10 gunshots. She saw Tommy Vasquez run through her yard "a couple days before" her interview on January 16, 2006.

On January 8, 2006, Salgado overheard appellant tell her husband that he and Gutierrez got into a fight, that Tommy Vasquez arrived, and that appellant told Vasquez to "blast" Gutierrez. Appellant stepped back and Vasquez fired at Gutierrez. After four or five shots, appellant took the gun from Vasquez and emptied the magazine at Gutierrez. Appellant then gave the gun back to Vasquez and told him to send it to the Los Angeles area. Appellant said he was trying to kill Gutierrez, but it was too foggy to see well. According to Salgado, Vasquez was being recruited into the Arvina 13 criminal street gang.

Sergeant Maricela Anglin assisted in the arrest of appellant a week after the shooting. At the booking station, Anglin overheard appellant say, in a phone call in Spanish, "tell Batillo to remember" and "I was with Batillo all night." FN3

  FN3. "Batillo" is Guillermo Navarro, appellant's brother.

Also at the booking station, Officer Bryan Clark overheard appellant tell another inmate "I" or "we" "shot him below the waist and I don't know how they got me for murder." When booked, appellant had 0.12 grams of methamphetamine in his wallet.

6

1
2
3
4

Officer Swanson testified as a criminal street gang
expert. Based on appellant's tattoos, his booking record,
and several crime reports spanning over a decade, Swanson
opined that appellant was an active member of the Arvina
13 criminal street gang and that the instant offense was
committed for the benefit of the gang.

5
6

Defense

7
8

Guillermo Navarro, Jr., an Arvina 13 gang member,
testified that he and appellant were in their backyard
smoking marijuana and drinking beer during the shooting.
They heard gunshots, but remained in the yard.

9

CCA decision, 2009 WL 1964068 at *1-*2.

10
11

V.   Admission of the Preliminary Hearing Testimony
     of Gutierrez

12

     A.   The State Court Decision

13
14
15
16

With respect to Petitioner's claim of a violation of his rights

to confront and cross-examine Gutierrez, the pertinent portion of

the state court's decision is as follows:

17

DISCUSSION

18

**1. Unavailability of Witness**

19
20
21
22

Appellant contends the trial court erred in ruling that
the prosecution acted with due diligence in trying to
obtain Gutierrez's presence at trial and, consequently,
the admission of Gutierrez's preliminary hearing testimony
violated his right to confrontation under the state and
federal Constitutions. We disagree.

23
24
25
26
27
28

At the beginning of trial on April 22, 2008, the
prosecution filed a motion in limine requesting that the
trial court find that Gutierrez was not available and to
allow it to read his May 9, 2007, preliminary hearing
testimony to the jury. The defense objected to admission
of the former testimony on grounds that the prosecution
had not exercised due diligence in attempting to secure
Gutierrez's attendance.

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

At the evidentiary hearing, District Attorney Investigator McKinley Mosley testified about his efforts to locate Gutierrez. Mosley met Gutierrez in late December of 2007 because the prosecutor wanted to assess Gutierrez for witness relocation. Gutierrez told Mosley he was in fear for his safety because Arvina 13 gang members were pressuring him not to testify. Mosley determined that Gutierrez was a proper candidate for relocation and began the relocation process. Gutierrez was to confirm an out-of-the area housing location, but he failed to call Mosley. Mosley tried to contact Gutierrez "multiple times," but was unable to reach him.

Two weeks later, Gutierrez called Mosley and informed the investigator that he was aware that he had been trying to contact him, but he did not want to be contacted and described himself as "depressed" and "laying low." He explained that he hid in the house when officers came looking for him, he did not want to participate in the trial, and he was not going to testify. After Mosley impressed upon Gutierrez the importance of his testimony, Gutierrez changed his mind and agreed to testify and to "continue on with the process." Gutierrez was again asked to provide the investigator with information of a suitable place to live. But he again failed to contact Mosley, and Mosley was not able to reach Gutierrez.

One or two weeks later, Gutierrez called Mosley and told him he did not want to be involved and he was unhappy about the amount of financial assistance available to assist him with relocation. After that, Mosley was again unable to contact Gutierrez.

On April 16, 2008, Mosley contacted Gutierrez's ex-wife in Tehachapi. At one point, Gutierrez had told Mosley that he might want to relocate to Tehachapi, where his wife, or ex-wife lived. The ex-wife told Mosley that Gutierrez was not there, that they were no longer together, and she had not seen him for a couple of weeks. His ex-wife thought he might be at his mother's in Arvin. Mosley did not search for Gutierrez in Tehachapi because his ex-wife told him she was "almost sure" he wasn't in Tehachapi.

Also on April 16, 2008, Mosley checked the Kern County jail, the coroner's office, a homeless center, and all of the hospitals "in town" in an effort to locate Gutierrez.

8

Sergeant Anglin testified that she was familiar with both Gutierrez and his mother's home in Arvin. According to Anglin, officers attempted to serve Gutierrez with a subpoena on April 10, 2008, and thereafter made about two attempts a day without luck. Anglin and other officers contacted Gutierrez's mother and siblings several times, and on one occasion, the mother told the sergeant that Gutierrez was in Tehachapi but would be returning at a later date.

On April 17, 2008, an officer contacted Gutierrez's sister in Arvin. She refused to cooperate and was upset that the police were harassing the family. Three days later, another officer contacted Gutierrez's brother who told him that Gutierrez was not home. Later that day, another officer contacted Gutierrez's mother who stated that she had not seen Gutierrez since the previous Friday and she did not know where he was.

Officer Swanson testified that he learned two men approached Gutierrez the day before the preliminary hearing and attempted to threaten him into not appearing. The men told Gutierrez that if he did not appear in court "everybody lives and everybody is happy."

The trial court found that the prosecutor had demonstrated due diligence in attempting to secure Gutierrez's presence, noting that, in the year before trial, Gutierrez testified at the preliminary hearing despite being threatened, the People had attempted to convince him to relocate and to testify, and that, in the week before trial, officers tried daily to contact Gutierrez. The court also noted that Mosley called Gutierrez's ex-wife in Tehachapi and learned that Gutierrez was not there. The court did not think Mosley was required to travel to Tehachapi because "reasonable diligence doesn't require that each and every lead be followed up." Instead, "[t]hey went everywhere where they knew that he was." The court concluded that:

> "[d]ue to the continuances of this matter in the past, it was key that the time when they really turned the heat up, which was two, three weeks before trial, was an appropriate time to do it when they realized that they no longer had the cooperation of Mr. Gutierrez and he was, in

9

1

2

fact, trying to hide himself so he would not
have to testify."

3

4

5

6

7

8

9

10

11

12

13

14

15

"The confrontation clauses of both the federal and state
Constitutions guarantee a criminal defendant the right to
confront the prosecution's witnesses. (U.S. Const., 6th
Amend.; Cal. Const. art. I, § 15.) That right is not
absolute, however. An exception exists when a witness is
unavailable and, at a previous court proceeding against
the same defendant, has given testimony that was subject
to cross-examination." (*People v. Cromer* (2001) 24
Cal.4th 889, 892 (*Cromer*).) In California, under Evidence
Code section 1291, subdivision (a)(2), the hearsay rule
does not bar admission of former testimony if the
declarant is unavailable as a witness and the party
against whom the former testimony is offered was a party
to the action or proceeding in which the testimony was
given and had an opportunity to cross-examine equivalent
to that as exists in the current proceeding. A declarant
is unavailable as a witness if the declarant is "[a]bsent
from the hearing and the proponent of his or her statement
had exercised reasonable diligence but has been unable to
procure his or her attendance by the court's process."
(Evid.Code, § 240, subd. (a)(5).)

16

17

18

19

20

21

22

23

"'What constitutes due diligence to secure the presence of
a witness depends upon the facts of the individual case.
[Citation.]'" (*People v. Sanders* (1995) 11 Cal.4th 475,
523.) Our Supreme Court has observed that the term
"reasonable diligence" or "due diligence" is incapable of
a mechanical definition, but it "'connotes persevering
application, untiring efforts in good earnest, efforts of
a substantial character.' [Citation.]" (*Cromer, supra*, 24
Cal.4th at p. 904.) Whether due diligence is shown depends
upon the totality of efforts used to locate the witness.
Relevant considerations include whether the search was
timely begun, the importance of the witness's testimony,
and whether leads were competently explored. (*Ibid.*)

24

25

26

27

28

Whether a party exercised reasonable diligence to locate a
missing witness is a mixed question of law and fact.
(*Cromer, supra*, 24 Cal.4th at pp. 898-899.) Where, as
here, the facts regarding the prosecution's efforts to
locate the witness are undisputed, we evaluate the
question of due diligence independently. (*Id.* at p. 899.)

10

In *Cromer, supra*, 24 Cal.4th 889, the prosecution's primary witness testified at the preliminary hearing and appeared cooperative. (*Id.* at p. 903.) Two weeks later, however, patrolling officers reported that the witness had disappeared from the neighborhood where she lived. Despite that information, the prosecution made no attempt to contact the witness for almost six months. It was not until shortly before trial that the prosecutor's investigators finally visited the witness's former residence, only to be told that she no longer lived there. When an investigator received information two days before trial that the witness was living with her mother in San Bernardino, no action was taken for two days. (*Ibid.*) The investigator ultimately located the mother's address, traveled there, spoke to an unidentified woman, and left a subpoena for the witness. (*Id.* at p. 904.) No efforts were made to locate the witness. (*Ibid.*) In affirming the reversal of the conviction based on the prosecution's lack of diligence, the court concluded that "serious efforts to locate [the victim] were unreasonably delayed, and investigation of promising information was unreasonably curtailed." (*Ibid.*)

In contrast, in *People v. Lopez* (1998) 64 Cal.App.4th 1122, the court held that due diligence had been established by the prosecution in attempting to secure the victim's attendance. There, the prosecutor's office spoke to the victim one month prior to trial, was given no reason to believe she would not cooperate, and subpoenaed her to testify at the trial. (*Id.* at pp. 1124-1125.) One week prior to trial, a victim advocate informed the prosecutor that the victim was told she would be needed the following week and the victim gave no indication that she would not be available. (*Id.* at p. 1225.) On the day of trial, the prosecution's investigator left telephone messages for the victim, went to her address, and was unable to find her. The investigator went to her grandfather's residence who reported that she was living in Las Vegas. (*Ibid.*) Although the investigator made no effort to determine whether she was actually living in Las Vegas, the court observed that "the prosecution was not required to do everything possible to procure [the victim's] attendance; it was only required to use reasonable diligence. There is nothing to indicate that had the prosecution been able to verify [the victim's] Las Vegas address she would have returned in time to testify." (*Id.* at p. 1128.)

11

Here, the People had the burden of establishing due diligence. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1296.) We conclude it carried its burden. As stated by our Supreme Court, the prosecution is not required "to keep 'periodic tabs' on every material witness in a criminal case, for the administrative burdens of doing so would be prohibitive." (*People v. Hovey* (1988) 44 Cal.3d 543, 564.) In addition, the prosecution is not required, absent knowledge of a "substantial risk that this important witness would flee," to "take adequate preventative measures" to stop the witness from disappearing. (*Ibid.*)

Here, although the prosecution realized early on that Gutierrez was a reluctant witness, it made numerous attempts to locate and keep Gutierrez as a witness. Realizing that Gutierrez feared for his safety, Mosley determined that Gutierrez was a proper candidate for relocation. In attempting to find a suitable location for Gutierrez, Mosley tried to contact him on numerous occasions, but was unable to. When Gutierrez did make contact, he informed Mosley that he did not want to testify or participate at trial. Mosley attempted to persuade him otherwise and was able to change his mind for a brief period of time.

Appellant's primary complaint is that the efforts to locate Gutierrez were untimely, since the prosecution knew from May of 2007 that Gutierrez was a reluctant witness. But we do not find the delay unreasonable. The October 2007, December 2007, and February 2008 trial dates were each vacated by defense motions. Once the trial date was confirmed for April of 2008, the prosecution stepped up its efforts to locate Gutierrez, but was unable to do so. In the two weeks leading up to trial, police officers attempted to personally serve Gutierrez twice daily. "[I]t is unclear what effective and reasonable controls the People could impose upon a witness who plans to leave the state, or simply 'disappear,' long before a trial date is set." (*People v. Hovey, supra*, 44 Cal.3d at p. 564 [due diligence found where investigators began search for witness one month before trial testimony was needed].)

Appellant's claim that the investigators should have made additional efforts to locate Gutierrez, *e.g.,* in Tehachapi or in "or some other part of the state," does not change our conclusion that the prosecution exercised reasonable

12

diligence. Mosley contacted Gutierrez's ex-wife in
Tehachapi and his mother and siblings in Arvin, to the
point that the family complained the police were harassing
them. Officers spoke to numerous family members, who were
all aware that police were looking for him. A week before
trial, Mosley also checked the jail, the coroner's office,
a homeless shelter, and hospitals in an effort to locate
Gutierrez. And although Gutierrez had told Mosley at one
point during the discussion on relocation that he might
want to relocate to Tehachapi, Gutierrez's ex-wife told
Investigator Mosley that she had not seen Gutierrez for
weeks, that she was "almost sure" he was not living in
Tehachapi, and that he was living in Arvin with his
mother. The investigator's decision not to go to Tehachapi
was reasonable, especially in light of the fact that
Gutierrez had previously told the investigator that he had
been hiding in his mother's house when officers came to
serve him. That additional efforts might have been made or
other lines of inquiry pursued does not affect our
conclusion. "It is enough that the People used reasonable
efforts to locate the witness." (*People v. Cummings,
supra*, 4 Cal.4th at p. 1298.) We conclude that "efforts of
a substantial character," as required by *Cromer*, were made
to procure Gutierrez's presence at trial. Therefore, the
trial court did not err in determining that Gutierrez was
"unavailable as a witness" (Evid.Code, § 240), and no
violation of appellant's right to confrontation occurred.

CCA decision at *2-*6.

B. Analysis

Aside from modifying the abstract of judgment to reflect

deletion of two sentencing enhancements, the CCA affirmed

Petitioner's conviction.  CCA decision at *8.  On September 17,

2009, in California Supreme Court (CSC) case number S175007,

Petitioner's petition for review was denied summarily without a

statement of reasoning or citation of authority.

This Court undertakes its analysis pursuant to 28 U.S.C.

§ 2254, which provides in pertinent part:

13

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless
the adjudication of the claim—

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as
opposed to the dicta, of the decisions of the Supreme Court as of
the time of the relevant state court decision.  Cullen v.
Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.
Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362,
412 (2000).

A state court's decision contravenes clearly established
Supreme Court precedent if it reaches a legal conclusion opposite
to, or substantially different from, the Supreme Court's or
concludes differently on a materially indistinguishable set of
facts.  Williams v. Taylor, 529 U.S. at 405-06.

A state court unreasonably applies clearly established federal
law if it either 1) correctly identifies the governing rule but
applies it to a new set of facts in an objectively unreasonable
manner, or 2) extends or fails to extend a clearly established legal

principle to a new context in an objectively unreasonable manner.
Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see,
Williams, 529 U.S. at 407.

An application of clearly established federal law is
unreasonable only if it is objectively unreasonable; an incorrect or
inaccurate application is not necessarily unreasonable.  Williams,
529 U.S. at 410.  A state court's determination that a claim lacks
merit precludes federal habeas relief as long as it is possible that
fairminded jurists could disagree on the correctness of the state
court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770,
786 (2011).  Even a strong case for relief does not render the state
court's conclusions unreasonable.  Id.  To obtain federal habeas
relief, a state prisoner must show that the state court's ruling on
a claim was "so lacking in justification that there was an error
well understood and comprehended in existing law beyond any
possibility for fairminded disagreement."  Id. at 786-87.  The
standards set by § 2254(d) are "highly deferential standard[s] for
evaluating state-court rulings" which require that state court
decisions be given the benefit of the doubt, and the Petitioner bear
the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.
Habeas relief is not appropriate unless each ground supporting the
state court decision is examined and found to be unreasonable under
the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199
(2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400.

Title 28, U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here, the CCA's decision concerning Petitioner's confrontation claim was the last reasoned decision in which the state court adjudicated Petitioner's claims on the merits. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that

16

judgment or rejecting the same claim are presumed to rest upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This Court will thus "look through" the unexplained decision of the CSC to the CCA's last reasoned decision as the relevant state-court determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

With respect to Petitioner's Sixth Amendment claim, the Confrontation Clause of the Sixth Amendment, made binding on the states by the Fourteenth Amendment, provides that in all criminal cases, the accused shall enjoy the right to be confronted with the witnesses against him.  Pointer v. Texas, 380 U.S. 400 (1965).  The main purpose of confrontation as guaranteed by the Sixth Amendment is to secure the opportunity for cross-examination to permit the opposing party to test the believability of the witness and the truth of his or her testimony by examining the witness's story, testing the witness's perceptions and memory, and impeaching the witness.  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Davis v. Alaska, 415 U.S. 308, 316 (1974).  Even if there is a violation of the right to confrontation, habeas relief will not be granted unless the error had a substantial and injurious effect or influence in determining the jury's verdict.  Jackson v. Brown, 513 F.3d 1057, 1084 (9th Cir. 2008) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

The testimonial statements of witnesses absent from trial can

be admitted only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 59 (2004).  A witness is not unavailable for purposes of the confrontation requirement unless the prosecution has made a good faith effort to obtain the witness's presence at trial, but the witness remains unavailable despite resort to available processes, such as the Uniform Act.  Barber v. Page, 390 U.S. 719, 723-24 (1968); Ohio v. Roberts, 448 U.S. 56, 74 (1980), overruled on another ground, Crawford v. Washington, 541 U.S. at 36.  The extent of efforts which the prosecution must undertake to produce a witness is a question of reasonableness. Ohio v. Roberts, 448 U.S. at 74.  The determination of good faith and reasonableness requires fact-intensive, case-by-case analysis. Christian v. Rhode, 41 F.3d 461, 467 (9th Cir. 1994).  Where it is greatly improbable that an effort would have resulted in locating a witness and producing the witness at trial, reasonableness does not require undertaking the effort.  Ohio v. Roberts, 448 U.S. at 76. The Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, such as contacting a source where there is no reason to believe that a source has useful information about a witness's whereabouts, or issuing a subpoena which is not reasonably anticipated to be effective.  See, Hardy v. Cross, - U.S. -, 132 S.Ct. 490, 494 (2011) (per curiam).

///

18

1    Here, the state court articulated standards of decision

2    compatible with the pertinent federal standard requiring reasonable,

3    good faith efforts to secure the attendance of the witness.  The

4    court reasonably concluded that the government's reasonable and good

5    faith efforts were demonstrated by numerous attempts not only to

6    locate Gutierrez, but also to maintain his willingness to testify.

7    Aware of the witness's reluctance to testify because of threats made

8    by members of a street gang, the government considered the

9    relocation program for the witness, repeatedly attempted to

10   communicate with Gutierrez about the program, solicited a preferred

11   relocation destination from Gutierrez, and encouraged him to

12   participate.

13   Although Gutierrez indicated a lack of desire to be involved

14   after the preliminary hearing, he had testified at the preliminary

15   hearing despite his earlier reluctance and reports of serious

16   threats from gang members.  There is no evidence that the

17   government's apparent inaction during the repeated delays of the

18   trial in late 2007 and 2008 had any effect on the availability of

19   the witness.  Nor is there evidence suggesting that the witness had

20   given anyone cause to believe he had left the area.  Within a couple

21   of weeks of trial, the government began daily efforts to serve

22   Gutierrez; repeatedly contacted the family at Gutierrez's mother's

23   home where his ex-wife believed Gutierrez was living and where

24   Gutierrez himself had admitted that he had hidden to avoid contact

25   with law enforcement; and checked other locations in the locale,

26   such as hospitals, shelters, and the jail.

27   Although Petitioner argues that it was unreasonable for the

28   government not to check additional databases, such as a DMV list,

19

the state court correctly concluded that the investigators used local sources of information that were reasonably expected to yield information concerning the witness's whereabouts.  The mere fact that more could have been done did not necessarily make the efforts undertaken unreasonable.  In reviewing a state court's application of the federal standard, a federal court cannot overturn the state decision simply because the federal court identifies additional steps that the prosecution might have taken; rather, a state court's application of the federal standard must merely be reasonable. Hardy v. Cross, 132 S.Ct. at 494.

In sum, the Court concludes that it cannot be said that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  The state court decision finding the witness to have been unavailable was not an unreasonable application of clearly established federal law even though the prosecution's efforts were unsuccessful.

It is undisputed that Petitioner had a prior opportunity to cross-examine the witness.  Accordingly, the Court concludes that the state court's decision concerning the unavailability of the witness and the absence of a violation of the rights to confront and cross-examine the witness was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1).  Therefore, it will be recommended that the claim be denied.

To the extent Petitioner argues that the introduction of Gutierrez's preliminary hearing testimony deprived him of rights guaranteed by the California's constitution or by California law

20

1  (see, e.g., FAP, doc. 10 at 12; trav., doc. 34 at 7), Petitioner has

2  failed to state facts that would entitle him to relief.

3      Federal habeas relief is available to state prisoners to

4  correct violations of the United States Constitution, federal laws,

5  or treaties of the United States.  28 U.S.C. § 2254(a).  Federal

6  habeas relief is not available to retry a state issue that does not

7  rise to the level of a federal constitutional violation.  Wilson v.

8  Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire,

9  502 U.S. 62, 67-68 (1991).  Alleged errors in the application of

10  state law are not cognizable in federal habeas corpus.  Souch v.

11  Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a

12  state court's interpretation of state law.  Langford v. Day, 110

13  F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding,

14  this Court is bound by the California Supreme Court's interpretation

15  of California law unless the interpretation is deemed untenable or a

16  veiled attempt to avoid review of federal questions.  Murtishaw v.

17  Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

18      Here, there is no indication that the state court's

19  interpretation of state law was associated with an attempt to avoid

20  review of federal questions.  Thus, this Court is bound by the state

21  court's interpretation and application of state law.  To the extent

22  Petitioner claims he suffered a violation of state law, the claim

23  should be dismissed because it does not warrant habeas corpus relief

24  in a proceeding pursuant to 28 U.S.C. § 2254.

25      VI.  Discovery Violation

26      Petitioner suggests that he might have been deprived of his

27  Sixth and Fourteenth Amendment right to disclosure of information

28

21

1  from the prosecution, and he asks this Court to review the in camera

2  proceedings undertaken in the trial court.

3       The CCA addressed this issue in its appellate decision.  The

4  CCA stated that it had reviewed the sealed records involved in

5  Petitioner's Pitchess motions and found no error.  CCA decision at

6  *6-*8.  However, a review of the documents lodged by Respondent in

7  connection with the answer shows that Petitioner failed to raise

8  this issue in his petition for review filed in the CSC.  (LD 4, Pet.

9  for Rev. to Exhaust State Remedies.)[1]

10       Respondent contends that Petitioner's claim is procedurally

11  defaulted because Petitioner failed to raise the issue before the

12  California Supreme Court during the direct appeal process, and the

13  claim cannot be exhausted.  With respect to exhaustion of remedies,

14  a petitioner who is in state custody and wishes to challenge

15  collaterally a conviction by a petition for writ of habeas corpus

16  must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

17  exhaustion doctrine is based on comity to the state court and gives

18  the state court the initial opportunity to correct the state's

19  alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S.

20  722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v.

21  Sunn, 854 F.2d 1158, 1162-63 (9th Cir. 1988).

22       A petitioner can satisfy the exhaustion requirement by

23  providing the highest state court with the necessary jurisdiction a

24  full and fair opportunity to consider each claim before presenting

25  it to the federal court, and demonstrating that no state remedy

26  remains available.  Picard v. Connor, 404 U.S. 270, 275-76 (1971);

27  Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court

28

---

[1]  "LD" refers to documents lodged by Respondent in connection with the answer.

22

will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 9-10 (1992), superceded by statute as stated in Williams v. Taylor, 529 U.S. 362 (2000) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended, 247 F.3d 904 (9th Cir. 2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).  In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275...(1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further in Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir. 2000), as amended by Lyons v. Crawford, 247 F.3d 904, 904-05 (9th Cir. 2001), stating:

> Our rule is that a state prisoner has not "fairly

23

presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See, Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7... (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, e.g., Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); Crotts, 73 F.3d at 865.
...
In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir. 2000), as amended by Lyons v. Crawford, 247 F.3d 904, 904-05 (9th Cir. 2001).

Thus, this Court cannot hear a federal petition for writ of habeas corpus unless the highest state court was given a full and fair opportunity to hear a claim.  28 U.S.C. § 2254(a).

Generally, a dismissal without prejudice for a lack of exhaustion of state remedies is not an adjudication on the merits. See, Slack v. McDaniel, 529 U.S. 473, 485-87 (2000) (holding that the dismissal of a prior petition for failure to exhaust state remedies was not an adjudication on the merits, and thus a later petition was not a second or successive petition).  If the petitioner fails to exhaust a claim but may be able to exhaust in the future, the petition should be dismissed, not procedurally barred.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  However,

24

where a petitioner fails to exhaust his claim properly in state court and the claim can no longer be raised because of a failure to follow the prescribed procedure for presenting such an issue, the claim is procedurally barred, and a federal petition must be denied. Johnson v. Lewis, 929 F.2d 460, 463 (9th Cir. 1991).

Here, while represented by counsel during the process of direct appeal, Petitioner failed to raise the Pitchess issue before the California Supreme Court by way of a petition for review of the CCA's decision. The issue could have been raised on direct appeal pursuant to Cal. Rule of Court, Rules 8.500(a) and 8.516(b)(1). A failure to raise in direct appellate proceedings an issue that could have been raised will bar a petitioner from raising such a claim in state habeas corpus proceedings absent special circumstances. Ex parte Dixon, 41 Cal.2d 756, 759-61 (1953) (barring habeas consideration of a claim not raised on appeal by a petitioner who had been represented by counsel in the trial court and had access to counsel during the appellate proceedings).

Petitioner forfeited any right he had to appellate review of his Pitchess claim. No circumstances appear that might lift the procedural bar to collateral habeas review resulting from Petitioner's failure to raise the claim before the California Supreme Court in the direct appellate proceedings. Accordingly, Petitioner could not exhaust his claim in the state courts. Thus, Petitioner's claim is procedurally barred and must be denied. Johnson v. Lewis, 929 F.2d at 463.

Further, as Respondent notes, to the extent Petitioner raised in the CCA a claim concerning the Pitchess procedures that were followed in the trial court, Petitioner did not raise a federal

25

claim, but only a claim based on California law.  (App. op. brief.,
LD 1, 28-31.)  Petitioner argued that the appellate court should
review the trial court's proceedings for an abuse of discretion; the
authorities cited were state court cases that relied on Cal. Evid.
Code § 1040 et seq., and cases determining the procedures to be
followed in the trial court and on appeal pursuant to the state
statute.  No constitutional arguments were made to the state
appellate court.

Petitioner's claim as set forth in this Court is likewise
essentially a claim based on state law.  Petitioner seeks this Court
to review the state court's rulings for an abuse of discretion.  He
cites state law cases regarding the establishment of the in camera
procedure pursuant to Cal. Evid. Code § 1040 et seq., <u>Pitchess v.
Superior Court</u>, 11 Cal.3d 531 (1974); the abuse of discretion
standard of review of evidentiary proceedings undertaken in the
trial court, <u>People v. Jackson</u>, 13 Cal.4th 1164, 1220-21 (1996); the
securing of meaningful appellate review by imposing specific record-
keeping requirements on the trial court with respect to the in
camera proceedings undertaken there, <u>People v. Mooc</u>, 26 Cal.4th
1216, 1228-32 (2001); and the remedy for errors, <u>People v. Memro</u>, 38
Cal.3d 658, 675-76 (1985) (holding that no pretrial writ review was
required as a condition to obtaining appellate review).  Petitioner
mentions the Sixth and Fourteenth Amendments only generally and
provides no facts to establish a violation of the Sixth or
Fourteenth Amendments.  (Doc. 10, 22-24.)

To the extent Petitioner's claim rests on state law, it must be
dismissed.  To the extent his claim is based on federal law,
Petitioner has failed to exhaust state court remedies and has not

1  stated facts entitling him to relief.  Therefore, even if it is

2  determined that the claim should not be denied, it should be

3  dismissed for lack of exhaustion.

4      In sum, it is recommended that the petition for writ of habeas

5  corpus be denied; if Petitioner's second claim is not denied, it

6  should be dismissed.

7      VII.  <u>Certificate of Appealability</u>

8      Unless a circuit justice or judge issues a certificate of

9  appealability, an appeal may not be taken to the Court of Appeals

10 from the final order in a habeas proceeding in which the detention

11 complained of arises out of process issued by a state court.  28

12 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336

13 (2003).  A district court must issue or deny a certificate of

14 appealability when it enters a final order adverse to the applicant.

15 Rule 11(a) of the Rules Governing Section 2254 Cases.

16     A certificate of appealability may issue only if the applicant

17 makes a substantial showing of the denial of a constitutional right.

18 § 2253(c)(2).  Petitioner must show that reasonable jurists could

19 debate whether the petition should have been resolved in a different

20 manner or that the issues presented were adequate to deserve

21 encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S.

22 at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

23 certificate should issue if Petitioner shows that jurists of reason

24 would find it debatable whether the petition states a valid claim of

25 the denial of a constitutional right or jurists of reason would find

26 it debatable whether the district court was correct in any

27 procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. at 483-84.

28

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was wrong or debatable among jurists of reason.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

VIII.  Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) Petitioner's state law claims be DISMISSED; and

2) The first amended petition for writ of habeas corpus be DENIED; and

3) Judgment be ENTERED for Respondent; and

4) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

28

Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   **February 10, 2014**                    **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE